The next case on our call this morning is Agenda Number 8, Case Number 104-553, People of the State of Illinois v. Lindell W. Howard. Mr. Hall, are you ready to proceed? Yes, sir. All right, you may proceed. Your Honors, Counsel, my name is Jerry Hall, and I am the attorney representing Lindell Howard, the defendant in this case. You know, I got up early this morning and I reviewed the trial court pleadings and the motions that we had filed there in the trial court, the transcripts of some of the testimony. I looked at the appellate court briefs and then the Supreme Court briefs, trying to better develop my argument, and then it kind of dawned on me, this is all stupid. You've all read everything that we've put before you, and I don't need to bore you with recitations of what Griever and Fellenauer and all those other cases say, or the significance of Section 5-3-1 of the Criminal Code and how it applies here. They may have helped to get us here, and I think they certainly are supportive, but I think the real problem and the reason we have cases interpreting this as an unofficial misconduct statute is that it's just not entirely clear. If it were, we wouldn't be here, because it would be, you know, black and white. When you look at Griever and Fellenauer and those other cases and Section 5-3-1, really, this is a case about interpretation of a somewhat vague statute and policy. And as a matter of policy, I pose the question to you, do you want to make a violation of our Constitution, as we have here, and it could be federal or state, as the case may be in the big picture, by a public official, potentially a criminal matter? I mean, think about that. Consider the possibilities. The statute just requires that you have a public official acting in his official capacity, exceeding his lawful authority, and acquiring some sort of personal gain or advantage. Now, as an example, let's say Governor Blagojevich enacts a policy in the executive office, and that policy is later found to be unconstitutional. It doesn't take much for a prosecutor to find the four elements of official misconduct, because clearly he's a public official, clearly he was acting in his official capacity, clearly he exceeded his lawful authority because whatever he did was found to be unconstitutional, and it doesn't take much of a stretch to imagine how they could prove that there's personal gain when a politician does something and has the opportunity to stand in front of the TV cameras and tout what a job he's done for the citizens of the state of Illinois or whatever. So certainly it wouldn't be difficult to find some personal gain. And with this case, I think if you don't tighten up the official misconduct statute, at least Section 3C, then you're going to open the floodgates for a multitude of prosecutions of public officials by overly zealous prosecutors. And what I suggest to you, and I know you've read everything, so I'm not going to even go into my argument in the brief, but what I suggest to you is you modify or even overturn Griever and Fellenhauer and all those cases before them so that it's clear that in order for a public official to violate the official misconduct statute, he must violate some criminal law, preferably a felony criminal law, because if you allowed him to violate a misdemeanor, then a prosecutor could bootstrap that misdemeanor into a felony official misconduct charge. Before, Mr. Hall, before we, you know, I understand now your position is to overrule that case law, but let's just talk about the case law for a minute because really what came before us is whether a violation of the Constitution could support an official misconduct. Correct. And as I understand your argument, as Griever, as it stands, Griever says that at a minimum, alleged facts that would show a defendant violated an identifiable statute, rule, regulation, or tentative professional code and demonstrate how a defendant exceeded his lawful authority. Yes, sir. Right? And you're saying that even Griever doesn't say it has to be, it can be in the Constitution. My question is, since we're talking about different cases of this court, we had a case, Leone versus the City of Chicago, a 1993 case, where we said the Illinois Constitution is not only a law, it is the supreme law in this state. So it's hard for me, and I understand again now that you're going a lot broader than this, you'd like us to say forget what Griever says, let's make it a felony. It has to be a felony for official misconduct to apply. But Griever even said a tenet of a professional code would apply. So if a tenet of a professional code would substantiate a charge of official misconduct, how could this court find that it's going far afield of Griever to say that a violation of the Illinois Constitution, something that we've called not only the law, but the supreme law, was violated? I have two responses for you, Justice. Number one, I think you have to look at 5-3-1, where it states that applicability of the common law, and it says that in order to have a criminal statute, it has to be included within the criminal code, or it has to be something that is made criminal by some other statute. And it doesn't say it has to be included in the Constitution, anything like that. Now, I don't dispute that the Constitution is our supreme law, but to make that into a criminal law is where I think they're making a mistake. But you don't, again, we're getting back to overruling Griever. I mean, you don't deny that Griever, the portion of it that I read, talks about a rule, a regulation, a tenet of a professional code. I don't dispute that. And the reason I bring up Griever in my brief is that when the Second District decided Griever, they included the words, a constitution. And when you decided it, you did not. And to me, that was an indication by inference that perhaps you didn't want to go that far in your analysis and expand that statute so large that it included a violation of the Constitution. And as to those other provisions in there, my position would be that they're just entirely too broad. When you say that we can violate, and I think the tenet of a professional responsibility code would probably be the least obnoxious thing here, possibly. But imagine if we as lawyers were to violate some code of professional responsibility and somehow that could be made into a criminal event. I think that's just a far too large of a stretch to make this criminal. Why isn't this more properly a policy argument that should be directed to the legislature? Well, perhaps it should, but we're here. And I think that it is something that you have to look at because, you know, I'm asking you, I'm not saying that this statute is unconstitutionally vague, but I am saying that it's sufficiently vague that we have cases trying to interpret it, and we're here today, and that's an indication to me that there is a problem with this statute. But if the legislature didn't like the way we were interpreting the statute, they certainly would be free to amend it, wouldn't they? I would think so, yes. So the fact they haven't probably indicates they're fairly happy with the court's interpretation. Well, I wouldn't necessarily agree with you, Your Honor, but it could be they haven't gotten around to it. But I think the logic of what I'm telling you is pretty solid, and I think when you try to expand this statute to include the things that it includes, I think you've gone way too far. I really do. If we were to not overrule Griever, you don't deny that rules, regulations, tenets of a professional code are not part of the criminal code? That's correct. So really, I mean, your argument, outside of the fact that you say that the appellate court mentioned Constitution, we didn't mention Constitution in Griever, and perhaps that we didn't mean to include it, your argument really does need us to overrule Griever, doesn't it? I think it does, because I think you've gone too broadly on this, way too broadly. And, you know, if you're going to construe criminal statutes in favor of the accused, then you ought to have a little better guidance as to what he can do or cannot do to fall within the statute. I mean, look at this very case. There were nine counts. Six of them got dismissed. And it was only when they came up with this constitutional theory that the case went to trial. And so I think that's a pretty good argument for the fact that this is a vague statute. He used his official credit card to play poker machines. Is that right? He used a credit card. Was that the deal? I'm sorry. He used a credit card to access cash at the Paradise River Boat Casino, which presumably most, if not all, of it went into the machines. And then he always paid it back, though, when the bill came in. So he's got that going for him. Yes. So that portion of it, he did pay it back. Correct. And that's part of your argument why this is too broad. Although it was wrong, it's not criminal. Well, I asked to come here just on this sole issue of whether or not violating the Constitution was a predicate act to get us into the statute. But I agree with you. You know, there's a lot of evidence here that's not before you now that we didn't come to this court on that I thought was pretty relevant in the 3rd District, but they found against us. And I asked to come here just on this sole issue. Okay. That pretty much concludes my argument. I would ask that if you find in our favor that you remand this to the Tasma County Circuit Court, ask them to dismiss the three indictments against Mr. Howard and to vacate his three convictions and his sentence. Thank you. Thank you, Mr. Hall. Mr. Truitt. Thank you. May it please the Court, I'm Eric Truitt, Assistant Attorney General, representing the people of the State of Illinois. I'd like to address two points in my argument. First, if this Court chooses not to overrule Griever, I think that the arguments that the defendant has offered in his brief do not support reversal of the conviction. And then secondly, this issue wasn't raised in his brief, but I'd like to discuss briefly the arguments that he's presented today about why this Court should overrule Griever, because in his brief he was relying on Griever and a negative implication from it to argue that the Constitution should be not included, but it appears today he's somewhat changing his position that Griever was incorrect and that the predicate on lawful act for the official misconduct must independently be a criminal act, preferably a felony. So I'd like to address that in some detail. As to the first issue, I think in his brief he offered three reasons why the Constitution, a violation of the Constitution, either federal or state, should not be a predicate on lawful act for the official misconduct statute. He relied on another provision in the criminal code called applicability of the common law. He discussed the negative inference in Griever, and they also presented a policy argument based on an overzealous prosecutor, you know, taking a minor constitutional violation and turning it into a felony. And I'll address each of those in turn. I think the simplest issue to resolve is the question about whether or not the official misconduct provision conflicts with Section 1-3, which says that, you know, all offenses must be defined by the code. I think this was addressed in the case People v. Samuel, an appellate court case, in which they clearly held that as long as the offense of which the defendant is convicted is defined by the code, the code doesn't have to define all the predicate acts for that offense. So here the offense of official misconduct is defined by the code. That's the offense that the defendant was convicted of. He wasn't convicted of violating the Illinois Constitution. He was convicted of violating the official misconduct provision. It predicated on the Illinois Constitution, though. Yes, that's true. The reason I wanted to get into the facts just a little bit with Mr. Hall, what if the defendant in this case had pulled out the wrong credit card when he was getting gas for a personal trip or something? Now, that would be technically in violation of the constitutional provision that says you use state, you know, public funds. However it reads, public funds, property, or credit cards shall be used only for public purposes. He would be technically in violation as much as it was for the $1,400 in cash advances that he took out, right? I mean, official misconduct could have been charged in that case as well. I would agree that that act would violate the Illinois Constitution. However, I think that on the facts that you've presented, the people would have difficulty proving the third element, which is acted with intent to obtain personal advantage. So it's true that the official misconduct statute does not require that they knowingly or intentionally violate the law, but it does require that they intentionally act to obtain a personal advantage. So in a situation such as that where there's an unintentional credit card usage, I think that the people would have difficulty establishing the third element of the offense. Let me just throw another factual situation at you that it's not a mistake, but an officer intentionally violates the defendant's Fourth Amendment rights under Illinois Constitution or U.S. Constitution. Would he be subject to being indicted? Again, Your Honor, I think that would turn on whether he... The advantage would be his quota, assuming there's a quota. The advantage would be promotions, a good reputation within the force. I would believe if those were cognizable advantages. And I'm not, you know, because the issue of personal advantage here was so clear, I'm not familiar about the, you know, what sort of non-financial advantages are sufficient to qualify as advantage. So I'd say if you thought that qualified as a personal advantage, then yes, that would be a chargeable offense under the statute. And I understand that that makes the statute quite broad, but I think there are a couple of rejoiners to that point. The first being that raised by Justice Garmon, which is that the legislature is aware of the breadth of this provision, and in essence, unless there's an independent constitutional problem posed by its breadth, which there is not that I'm aware of, that that's the job for the legislature to fix. And the second point I'd say there is that the criminal code in general tends to be broad, and the decisions about whether or not the facts of a particular case support prosecution, those are typically left to the state's attorney to make those decisions. I mean, almost all criminal systems I'm aware of in the U.S., and especially the Illinois system, they entrust the state's attorney to make those kinds of decisions about whether or not a, you know, whether or not a particular set of facts warrants a prosecutorial, you know, prosecuting them for the crime. Counsel, just while we're on hypotheticals, a prosecutor commits a Brady error in the trial court and wins the case as a result of it and gets a promotion. Would that be something that we subject to prosecution under this suggestion? I mean, again, because the facts of personal advantage in this case are so clear, I'm not intimately familiar with what this court or the appellate courts have said qualifies as personal advantage. That's why I suggested the promotion for winning the case. I mean, if that satisfied the definition of personal advantage, then it would appear that all of the other elements of the offense are satisfied, yes. So to the extent that this court is concerned Your comfort level hinges upon the state deciding to do the right thing. Well, not necessarily. I guess I think there are a couple things here. I would say first that the concerns that are being expressed here go to the definition of personal advantage in the official misconduct statute. The problem here is not that someone could be prosecuted on the predicate act of violating the Constitution. The problem that, you know, several of your questions have addressed is, you know, how should we define personal advantage such that, you know, you can't be prosecuted on kind of the tenuous theory that, you know, it would advance your career or make a quota. So to the extent that this court is Here are the advantages that the defendant had the apparent use of the money. Well, that's his advantage, right? State's attorney Umholtz established a trial act with three personal advantages. The first was the ability to be able to continue gambling, which to someone who enjoyed gambling as much as the defendant did, that's a substantial personal advantage. The second advantage is what I'll call and what the state's attorney called the float, which is in essence an interest-free loan from the state from the period at which he obtained the cash advance to the period at which the bill came due. And then the third personal advantage was the, you know, the comps, the player reward points that were exchanged for both. I think that in the record they said it was mostly for cigarettes and for food, but they could also be redeemed directly for cash. That's the last one I'm going to give you. Yes. But I'm going to go back to Justice Freeman's fellow with the fellow at the gas pump. But this time he does it intentionally because he likes to drive. And he pays off his credit card bill, and other than that, there is no loss to the government. I mean, I think that that would satisfy all the elements of the offense because Article 8, Section 1 says use of credit, not just use of the money. So the fact that you paid it back later doesn't mean that you didn't violate the provision. And then if he's doing it intentionally for personal gain, then, again, that would satisfy the elements. So, you know, I'd like to reiterate this. The guy at the pump and even the gentleman with the poker machines, the case in front of us, it seems like a lot more nebulous as to personal advantage than the state's attorney who commits a Brady violation who's decided to run for state's attorney, and that happened to be a big case that he wanted to win, or the quota example given by Justice Freeman of the police officer who wants to move up in the force. I mean, it doesn't seem like it's that difficult to come up with something for personal advantage, at least with our hypotheticals, does it? No, and I would agree. And if this court is concerned that personal advantage has been defined too broadly or needs some tightening up in the words of my opponent, I would say that that would be the job for a different case because I don't think in this instance that there's any question on the record that the defendant obtained substantial personal advantage from his misuse of the public credit. So, you know, to the extent there are concerns about that, I don't think that they would justify reversing the conviction because, you know, the factual basis for personal advantage was established at trial, and I don't see anything in my opponent's argument that would lead us to believe that the defendant didn't actually obtain a personal advantage here, and I think there's a pretty broad gap. Is the issue that the Constitution is used as the site of a rule that the violation of which subjects you to criminal penalty, do you think that fairly states in any way the argument of the defendant in this case? My understanding of the defendant's argument in his brief and now here argument is twofold. He's saying first that we shouldn't allow the Constitution to be a predicate act, and then second, I think in recognition of some of the issues that Justice Thomas recognized, some of the questions that Justice Thomas asked, he's now saying that the predicate act has to be a criminal offense and can't be a violation of a rule regulations statute unless it's, you know, a criminal provision. So I think those are the two lines of argument that he's advancing. If you know, why is it the predicate act was not the resolution that authorized the use of credit cards rather than just the Constitution? So you need a basis for that decision. I don't know for sure why they chose to identify the Illinois Constitution. There was, and I don't know if this is what you're, there was some discussion at trial about whether or not the resolution even authorized the card to the mayor in the first instance. I don't know if that is the concern that you're addressing. But I don't know as a factual matter why the state's attorney, you know, chose the particular predicate acts that he did. I mean, I can say that I think that the Illinois Constitutional provision is clearly applicable to these facts, but that's not to the exclusion of some other, you know, identifiable source of law. Is there any truth to the, what I'm about to say, that generally when you see a constitutional provision such as this one, it results in spawning legislation that defines a crime. And that's what you might expect to happen with a provision like that rather than for the provision itself to become the predicate of a crime. I see what you're saying. And that actually highlights a weakness in the claim that we should exclude the Constitution. If the concern is that we allow the Constitution to be, you know, the source of a felony, then any ticky-tack violation could then become a crime. But the legislature could clearly Except the legislation could go through the process and be drafted to avoid the absurd results. Yes, but it also could simply just codify the constitutional requirements. Or it could say that the predicate has to be a crime defined in the criminal code. It could also say that, but, you know, looking at 33C, it does not say that. It simply says that the act has to be for the intent of personal advantage and in excess of his lawful authority. And I think that leads us back to Justice Garmon's point that, you know, if there's just a policy concern about the breadth of the statute, that's a legislative function. Clearly, if constitutional considerations such as due process are implicated, then the court can read a statute in order to avoid the constitutional problem. But there's no constitutional problem that defendants identify with having a broad criminal statute. It's a pure policy concern, and that's something for the legislature to address if it sees fit. I think this discussion has adequately addressed the first point, which is that if you don't overrule Griever, the basis for affirming the conviction is strong. There's nothing unique about a constitutional provision to distinguish it from a rule, regulation, tenet of professional code, any of that. There's no real reason why you would treat it differently. The argument that you can take a negative implication from Griever to exclude the Constitution, that's a pretty thin basis for this court to have adopted a new rule, especially since it would have entailed overruling the only appellate court opinion squarely on the subject. I believe if this court had intended to hold that the Constitution could not be an unlawful predicate act, that it would have confirmed that issue directly instead of this theory of negative implication. And then finally, the question of the overzealous prosecutor, the solution that he's offering really doesn't fix the problem. You exclude the Constitution and you still have the problem of de minimis violations of rules, regulations, statutes, tenets of a professional code. So really it seems like what he's getting at is there should be some sort of threshold or we should define personal advantage in a way that it excludes the career-minded prosecutor or the quota-minded police officer. But again, the facts of this case wouldn't support reversal because under any threshold or any tightened definition of personal advantage, the facts would support affirmance. Now, with respect to overruling Griever, I think there are two reasons why this court, or three reasons actually, and the first is that this is a job for the legislature if they're unsatisfied with the scope of the statute, absent any independent constitutional concern. Secondly, it would make the official misconduct statute redundant if the unlawful predicate act had to be a felony, especially in this case. The defendant got probation, so it's hard to see what the official misconduct offense would be adding if he committed an underlying felony. And the third is that, again, these are the types of decisions that are typically left to prosecutorial discretion. And for better or for worse, that's what the criminal code does. There's a number of criminal statutes that are broadly written, and our system trusts the prosecutor to make wise decisions about who should be charged and who shouldn't. Thank you very much. Thank you. Thank you, Mr. Hall. I'm sorry, Mr. Truitt. Rebuttal, Mr. Hall? Mr. Hall, why don't we start with where he ended, and I think it came up somewhere in the middle as well. Aren't there a lot of criminal provisions that someone could fall technically within the ambit of the violation and yet we have to somewhat rely on the wisdom of the prosecutor? That's where he finished up. I think that's true, but I don't think it would be wise to rely on the wisdom of the prosecutors because, you know, as he was making his argument, I was thinking back to a book I read about the Kennedy assassination and how that prosecutor down in New Orleans indicted one of those people with just nearly nothing. And I think if you leave it to the prosecutors, then there's no certainty in where we stand on these things. At about the same time that this Howard case was going on, there was that case up north where a mayor did something very similar, and I had occasion to speak with the attorney who was representing him. And, you know, he was wondering, well, how did you guys end up where you were at and why are we where we're at? And, you know, we're trying to figure out exactly what the statute requires and what's going to fit and what's not. And I think it's just too uncertain if you don't tweak this thing and tighten it up and make it clear what is a violation. And the other point that he raised at the end was that you would want us to indicate that the only predicate could be a felony. And he brings up this example where here the defendant got probation. I mean, where does official misconduct fall? How will it be used if all predicates to the offense have to be a felony? Maybe you don't need the official misconduct statute. Maybe if they commit a felony. We're going to throw our 2006 case out the window and we're going to somehow just on our own here declare that unconstitutional, get rid of that. Is there anything else you want us to do while you're here or what? I'm not saying you have to. And don't disregard that some might say you want us to be the legislature as well. I think that, you know, when you look at Griever, I think to the extent that when you guys decided it, and ladies, that you left out the word constitution, I think you were right. To the extent that Griever and Fellenauer and all those cases before it used that broad language about regulations and rules and even tenets of professional responsibility, I think it's entirely too broad. I mean, especially when you start making that a felony. And I think, you know, counsel's concessions to you in his argument support that position. You get the classic case of a police officer making an arrest and pushing the envelope on the Fourth Amendment. Well, he might be enhancing his career, but he also may be committing official misconduct. And I don't think you want to go there. And it may not be an intentional violation. Maybe he didn't know better. Maybe he thought he was supposed to search the interior of this car when he wasn't, but he did. And so he violated the Constitution. And if all that comes together as an official misconduct charge, he potentially could be found guilty of that. And to me, that's just not what it's designed for. If we affirm the appellate court's decision, it's your intention that I take it that even though this is a violation of a specific section of the Illinois Constitution, Article 8, Section 1A, it must be generally applicable to the violation of any portion of any Constitution. Yes, if you're going to affirm, I think any constitutional violation by a public official that garners the other elements of official misconduct, of acquiring an advantage and accession of authority, would be a crime. And think of all the cases, Your Honor, where constitutional issues were brought before you. Ultimately then, once those cases are decided, they go back home and somebody gets charged with a crime because you say you violated the Constitution and you're a public official. And some overzealous prosecutor says, I can figure out how he got a personal gain. To me, it's just way too broad. And you have some of the same problems with rules, regulations, statutes, and that's why you're saying that Griever has to be at the very least tightened up. I think so, yes. Some of your same argument. We're dealing with a constitutional predicate here, but you would have the same arguments as it related to rule, regulation, tenant in one fashion or another. Yes, I would. I mean, I one time was called before the Attorney Registration and Disciplinary Commission because I didn't return a phone call. Now, imagine, that would fit the first leg of the test. And you go from there and find reasons why I did it and maybe I exceeded some authority. And could I get charged with a crime for doing that? I mean, to me, it's just ridiculous that it is so broad that, number one, we don't know for sure what we're even proscribed. And number two, a lot of people could get charged with a felony that just should not be there. How do you answer the Attorney General's point that no matter how tight we make it or how much we describe it, this guy's conduct would meet the standard? Can I go into that? I ask you. Okay. Did he meet the standard? You know, you look at the evidence in the trial court and you look at the elements of the official misconduct statute, number one, there was a brief discussion about this credit card when counsel was up here. This credit card came about as a result of an application that was signed only by Mr. Howard. It was not signed by anybody from the city. This application is in the record, so I'm not telling you something that's outside the record. The bill came in his name. He paid the bill direct to Visa. The state called a lady, I believe her name was Marilyn Feltz, from Heriot Bank where the credit card originated. And she testified that this was part of their corporate program, and if one card wasn't paid, then the entire program's cards would be shut down. And we got it in there that we produced the records from one particular month where one of the city credit cards was actually shut off because it didn't get paid on time, but none of the other ones did. And so I think it's certainly questionable whether or not it was even a city credit card. When you look at the other elements, did he get an advantage? The appellate court said, well, he got to gamble and he had the use of the money. Well, that's true. But, you know, again, I think that's a pretty de minimis argument because he always paid the bill when it came to. One time one of his checks bounced, but he took care of it right away. And so there was no harm in that. You look at the comps issue. They explained at the trial court that he got one comp point for every $8 that he put into a machine. Well, you figure that out, and the way it all worked, and I explained it in my appellate brief, his comps amounted to $1.75. And they made a big deal about that, that that was something really special. So I think when you look at the factual evidence here, you know, I didn't ask for you to review that because I was hoping you'd take the case and you could hear this constitutional argument. But when you look at the facts, I don't think they were very good in the first place. Thank you. Thank you. Does that conclude your rebuttal? Yes, it does. Thank you all very much. Thank you, Mr. Truitt. Case No. 104553, People of the State of Illinois v. Lindell W. Howard, is taken under advisement as Agenda No. 8.